```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
In re: RICHARD A. SMITH           MEMORANDUM AND DECISION
                                  Bankr. Case No. 896-80189-478
         Debtor.                  09-CV-01276 (JS)
-------------------------------X
```

APPEARANCES:

For Appellants:

Richard A. Smith,     Thomas J. McGowan, Esq.
Nelsi Smith, and      Meltzer, Lippe, Goldstein & Breitstone, LLP
Carole Ann Caruso     190 Willis Avenue
                      Mineola, New York 11501

For Appellee:

Kenneth Silverman     Anthony C. Acampora, Esq.
                      Silverman & Acampora, LLP
                      100 Jericho Quadrangle
                      Jericho, New York 11753

                      Ronald J. Friedman, Esq.
                      Silverman & Acampora, LLP
                      100 Jericho Quadrangle
                      Jericho, New York 11753

                      Shalini Vhora, Esq.
                      Silverman & Acampora, LLP
                      100 Jericho Quadrangle
                      Jericho, New York 11753

SEYBERT, District Judge:

Pending before this Court is an appeal by Mr. Richard Smith (the "Debtor"), his wife, Mrs. Nelsi Smith and, his sister, Ms. Carole Ann Caruso (collectively referred to as the "Smiths" or "Appellants") from the January 26, 2009 Memorandum and Order by United States Bankruptcy Judge Dorothy Eisenberg denying a motion to reopen Mr. Smith's Chapter 7 bankruptcy case. For the reasons

set forth below, the Bankruptcy Court's decision is AFFIRMED.

## BACKGROUND[1]

On January 12, 1996, Mr. Smith filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. On July 11, 1996, the petition was converted to a Chapter 11 reorganization. On April 24, 1997, it was converted to a Chapter 7 liquidation. Kenneth Silverman, Esq. was appointed the estate's Trustee on April 29, 1997. Mr. Silverman acted as the Chapter 7 Trustee until the final decree was issued on February 13, 2007.

On or about July 11, 1990, approximately six years prior to filing the initial bankruptcy petition, Mr. and Mrs. Smith, as shareholders, sought dissolution of Meadow Mechanical Corporation ("Meadow") in the Supreme Court of the State of New York, County of Queens ("Dissolution Action"). Mr. and Mrs. Smith commenced the Dissolution Action because the Meadow shareholders removed Mr. Smith as Meadow's President and, after his removal, allegedly conveyed assets, business, and business opportunities to a new business incorporated as Fresh Meadow Corporation ("Fresh Meadow"). According to Mr. and Mrs. Smith, these actions purportedly gave

---

[1] This case spans approximately ten years. For a more comprehensive discussion of the factual and procedural history of this case, see Judge Eisenberg's January 26, 2008 Order.

rise to a variety of claims against the Meadow shareholders.[2]

Contemporaneous with the Dissolution Action, Mr. and Mrs. Smith commenced a separate action against Meadow to collect upon a promissory note worth $275,000 ("Note Action"). In 1992, Mr. and Mrs. Smith moved for summary judgment on the Note Action in the New York Supreme Court, Queens County. On June 18, 1992, the Supreme Court denied the motion. On appeal the Appellate Division, Second Department affirmed the decision. Smith v. Meadow Mech. Corp., 203 A.D.2d 356 at *356-357 (1994).

On June 5, 2002, the Trustee filed a motion with the Bankruptcy Court seeking approval to settle the Dissolution Action and the Note Action for $350,000. Citibank, which held a lien on any proceeds the Debtor might recover,[3] supported the Trustee's settlement. But Mr. Smith objected to it and filed a cross-motion

---

[2] The Meadow Defendants in the Dissolution Action initially elected to purchase Mr. and Mrs. Smith's shares, but they later revoked their election. However, the Appellate Division, Second Department rejected the Meadow Defendants efforts to revoke its election and directed them to post a $750,000 undertaking. See Smith v. Russo, 230 A.D.2d 863, 864-865 (1996).

[3] European American Bank ("EAB") possessed a first priority security interest, and lien in all proceeds the Debtor recovered from the Dissolution Action and the Note Action. Citibank subsequently acquired EAB. Nelsi Smith purchased claims held by creditors Silverite Construction Co., Angelo Silveri, and Constance P. Salerno. Ms. Caruso, Mr. Smith's sister, purchased Citibank's claim on or about July 5, 2005.

seeking permission to prosecute these claims on his own behalf.[4] On March 8, 2004 the Bankruptcy Court denied the proposed settlement, reasoning that even though the Trustee "is experienced and competent," his analysis of the value of the claims was "deficient and incomplete." Therefore, the Bankruptcy Court held that the Trustee could either propose another settlement or continue the Dissolution Action, Note Action, and any other causes of action against Meadow in state court. The Bankruptcy Court also denied Debtor's cross-motion without prejudice. The Trustee appealed, but this Court affirmed the Bankruptcy Court order.

On April 20, 2005, the Debtor moved to compel the Trustee to prosecute the Dissolution Action, Note Action, and the other claims the Debtor purportedly had. Specifically, the Debtor moved to have the Trustee amend the Dissolution Action to include additional defendants, and to add two claims against the Meadow shareholders for breach of fiduciary duty and fraudulent conveyance. The Trustee opposed the motion, but offered to permit the Debtor or Citibank to prosecute the alleged claims. On May 10, 2005, the Bankruptcy Court denied the motion to compel. The Bankruptcy Court stated that it would not force the Trustee to

---

[4] Prior to attempting to settle this claim, the Trustee filed a similar motion for a proposed settlement of $400,000, which they later withdrew, and which Silverite Construction Co., Mr. Silveri, and Ms. Salerno had objected.

4

prosecute claims that the Trustee believed would not benefit the estate, and thus, compromise the Trustee's business judgment.[5] This decision was not appealed, and thus became a final order.

On July 14, 2005, the Bankruptcy Court authorized the Trustee to abandon to the Debtor the Dissolution Action, Note Action, and any other claims the Debtor purportedly had. The Bankruptcy Court further directed the Trustee to hold the escrow for the Dissolution Action, pending a disposition between the Debtor and the Meadow defendants.[6] The Debtor then moved in State Court to amend the Dissolution Action to include the additional claims and parties. The State Court denied the motion, finding that the statute of limitations had expired many years before. (J. Kelly, October 16, 2006 Order) (citing N.Y. C.P.L.R. §§ 213, 214).

On or about July 2, 2008, the Smiths moved to reopen Mr. Smith's Chapter 7 case to sue the Trustee's counsel for malpractice. Specifically, they alleged that the Trustee's counsel failed to prosecute and investigate the purported breach of fiduciary duty and fraudulent conveyance claims. On July 10, 2008 the Bankruptcy Court denied the motion holding that no privity

---

[5] The Trustee informed the Bankruptcy Court that the estate was administratively insolvent.

[6] In January 2007, 19 months after the Trustee abandoned the claims to Debtor, the Debtor and Meadow defendants agreed upon the disposition of the escrow.

5

existed between the Debtor and the Trustee's counsel.  No appeal of that decision was made, and thus, the order became final.

On or about October 24, 2008, the Smiths filed another motion to reopen, this time to commence adversary proceedings against the Trustee and his bond.  The Smiths alleged that the Trustee was negligent and breached his fiduciary duty by failing to pursue and investigate certain claims, and that the insurance companies, Liberty Mutual Insurance Company, National Union Fire Insurance Company, and the Fireman's Fund Insurance Company ("Bondholders") who issued the blanket bonds, failed to ensure the Trustee's faithful performance of his duties.  Specifically, the Smiths argue that the Trustee failed to bring: (i) a malpractice claim against the Trustee's former counsel; (ii) a fraudulent conveyance claim against the Meadow shareholders; (iii) a breach of fiduciary duty claim against the Meadow shareholders; and (iv) a failure to collect on a promissory note claim.  The Bankruptcy Court denied the Smiths' motion on January 26, 2009, concluding that the estate would not benefit from allowing the Smiths to reopen the bankruptcy case, since the proposed complaint "could not withstand a motion to dismiss."  In re Smith, 400 B.R. 370, 381 (E.D.N.Y. Bankr. 2009).  Furthermore, the Bankruptcy Court stated the "only reason offered by the Movants to reopen this case . . . is to examine into the acts of the Trustee in order to fish for

evidence to support the Movants' unproven allegations of wrongdoing in spite of all statutes having run." Id.

On or about January 28, 2009, the Smiths again moved the Bankruptcy Court with an emergency application to reopen the Debtor's case to prevent the statute of limitations from expiring on the claims against the Bondholders. The Bankruptcy Court denied the motion on February 5, 2009. The Smiths then sought identical relief with this Court. This Court recognized that the emergency application was nothing more than a demand to "hurry up" and reverse the Bankruptcy Court's January 26, 2009 order denying the Smiths' motion to reopen. In re Richard Smith, 09-CV-0508, 2009 U.S. Dist. LEXIS 10719, *8 (E.D.N.Y. Feb. 12, 2009). This Court further stated that the application for emergency relief was "truly inappropriate," since the Smiths "had years, not days, to seek the relief they are requesting." Id.

On April 1, 2009, the Smiths appealed the Bankruptcy Court's order denying their motion to reopen. (Docket Entry 4).

DISCUSSION

I. Standard Of Review

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. FED. R. BANKR. P. 8013. The Bankruptcy Court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set

7

aside unless clearly erroneous." Id.; see also In re Momentum Mfg. Co., 25 F.3d 1132, 1136 (2d Cir. B.A.P. 1994); In re PCH Assoc., 949 F.2d 585, 597 (2d Cir. B.A.P. 1991). The Bankruptcy Court's legal conclusions are reviewed de novo. See In re Momentum Mfg. Co., 25 F.3d at 1136.

A district court may not vacate a bankruptcy court's order denying a debtor's motion to reopen unless there is a clear showing that the failure to reopen was an abuse of discretion. In re Moyette, 231 B.R. 494, 497 (E.D.N.Y. 1999); see also In re Candelaria, 121 B.R. 140, 142 (E.D.N.Y. 1990); In re Cutter, 05-CV-5527, 2006 U.S. Dist. LEXIS 61242, *10 (E.D.N.Y 2006). Specifically, the district court must find that the bankruptcy court abused its discretion in finding that the case should not be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

## II. The Appellants' Basis For Appeal

The Appellants contend that the Bankruptcy Court abused its discretion by declining to reopen the Debtor's Chapter 7 case for the purpose of pursuing adversary proceedings against the Trustee and the Bondholders. The Appellants contend that the Bankruptcy Court erred by examining the underlying claims' merits and concluding that the Trustee was not liable because he made a "business judgment" not to pursue these claims. Moreover, the

Appellants argue that the Bankruptcy Court erred by concluding that the statute of limitations on the adversary proceedings against the Trustee and the Bondholders had expired.

    A.   <u>Examining Merits Is Appropriate</u>

Appellants contend that it was improper for the Bankruptcy Court to examine the underlying claims' merits in denying their motion to reopen. Appellants are correct that a motion to reopen is generally a "ministerial act." <u>See</u> <u>In re Menk</u>, 241 B.R. 896, 913 (9th Cir. B.A.P. 1999). But it is nevertheless appropriate for a bankruptcy court to review the underlying claims' merits before granting such a motion. <u>See</u> <u>In re Lois C. Hardy</u>, 209 B.R. 371, 374 (E.D. Va. Bankr. 1997). And, after conducting this review, it is not an abuse of discretion to deny reopening an action that "is completely lacking in merit." <u>Arleaux v. Arleax</u>, 210 B.R. 148, 149 (8th Cir. B.A.P. 1997); <u>see</u> <u>also</u> <u>In re Carter</u>, 156 B.R. 768, 770-71 (E.D. Va. Bankr. 1993); <u>In re Herzig</u>, 96 B.R. 264, 267 (9th Cir. B.A.P. 1989).[7] Thus, the Bankruptcy Court did not err in reviewing the underlying claims' merits.

---

[7] Even though the Appellants now argue that examining the underlying claims' merits in a motion to reopen is improper, they never appealed their first motion to reopen, which was also denied on the merits. Indeed, Appellants' first motion to reopen, in order to sue the Trustee's counsel, was denied because the Bankruptcy Court determined that no privity existed between the Trustee's counsel and the Smiths.

9

B.  <u>Claims Against The Trustee</u>

In a Chapter 7 bankruptcy, a trustee has the general duties of gathering the estate assets, liquidating them, distributing the proceeds to creditors, and closing the estate. <u>See</u> 11 U.S.C. § 704(a). Trustees are required to use reasonable diligence in exercising these duties. <u>See</u> <u>United States v. Shadduck</u>, 112 F.3d 523, 531 (1st Cir. 1997). Thus, a trustee can face personal liability for failing to reasonably carry out their duties. <u>See</u> <u>In re Gorski</u>, 766 F.2d 723, 727 (2d Cir. 1985). Indeed, a trustee can be held personally liable based on negligence alone. <u>See</u> <u>Id.</u>; <u>see also</u> <u>In re Cochise College Park</u>, 703 F.2d 1339, 1357 (9th Cir. 1983). But a trustee is not liable for objectively reasonable mistakes in judgment where discretion is allowed.[8] Indeed, a bankruptcy trustee "is immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order." <u>In re Center Teleproductions</u>, 112 B.R. 567, 578 (S.D.N.Y. Bankr. 1990); <u>see also</u> <u>Kovalesky v. Carpenter</u>, 95-CV-3700, 1997 U.S. Dist. LEXIS 15700, *12-13 (S.D.N.Y. 1997).

A trustee has discretion in deciding whether to litigate

---

[8] <u>See</u> <u>In re Ngan Gung Rest.</u>, 254 B.R. 566, 570-571 (S.D.N.Y. Bankr. 2000); <u>In re Center Teleproductions, Inc.</u>, 112 B.R. 567, 577 (S.D.N.Y. Bankr. 1990); <u>Cochise</u>, 703 F.2d at 1357.

10

an estate's claims.  Thus, a bankruptcy trustee is not required to litigate every cause of action the estate may hold.[9]  Instead, the trustee need only press claims that, in its business judgment, are in the estate's best interest to pursue.  See In re Cons. Ind. Corp., 330 B.R. 712, 715 (N.D. Ind. Bankr. 2005).

Here, Appellants contend that the Trustee should have sued his own counsel for malpractice for failing to pursue claims that the Trustee had determined in his own business judgment not to commence.  This argument is without merit.  And, in any event, the statute of limitations has run on the Appellants' proposed action.  The Trustee's former counsel was terminated in 1999.  Under New York law, the statute of limitations for the alleged malpractice claim began to run in 1999 and thus ended in 2002.  Therefore, the limitations period on any claim against the Trustee for failing to bring a malpractice claim began to run in 2002 and ended in 2005.  See In re Louis Rosenberg Auto Parts, Inc., 209 B.R. 668, 676 (W.D. Pa. Bankr. 1997) (applicable state law controls limitations period for claims brought against a trustee); In re Noakes, 104 B.R. 323, 327 (D. Mont. Bankr. 1989).  Consequently, Appellants' ability to bring an adversary proceeding against the Trustee expired

---

[9] See In re Cons. Ind. Corp., 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005); Koch Ref. v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1346-47 (7th Cir. 1987).  In re Reed, 178 B.R. 817, 821 (D. Ariz. Bankr. 1995).

approximately 5 years ago.  So the Bankruptcy Court did not err in concluding that this claim lacked merit and was barred by the applicable statute of limitations.

Appellants also contend that the Trustee should have pursued and investigated the purported breach of fiduciary duty and fraudulent conveyance claims against the Meadow shareholders.  The Bankruptcy Court did not err when it concluded that the Trustee properly exercised his business judgment when he chose not to pursue these claims.[10]  Regardless, the statute of limitations on these claims has also expired.  The October 16, 2006 State Court decision held that the breach of fiduciary duty and fraudulent conveyance claims against the Meadow shareholders expired in December 2000.  Thus, Appellants had until 2003 to file an action against the Trustee for failing to pursue them.  As such, the Bankruptcy Court did not err when it concluded that this claim was also without merit and barred by the applicable limitations period.

Appellants also contend that the Trustee breached his fiduciary duty when he failed to pursue the Note Action.  But, as the New York Appellate Division, Second Department held, the note

---

[10] These are derivative claims.  As such, Mrs. Smith, as a shareholder of Meadow, also had an opportunity to pursue or preserve these claims but did not do so.  Similarly, Citibank, as the then secured creditor in the case, did not seek to pursue these derivative claims, and instead supported the Trustee's purported settlement.

12

was not a negotiable instrument.  See Smith v. Meadow Mech. Corp., 203 A.D.2d 356, 356-357 (2d Dep't 1994).  Rather, the note was intertwined with the shareholders' agreement and the subordination agreement.  Id.  Consequently, the Bankruptcy Court did not err when it concluded that since the note was not a freestanding negotiable instrument, it could not have been collected without resolving the dissolution proceeding.

Appellants also contend that New York law tolled the claims against the Trustee until he openly repudiated his obligations, or his relationship had been otherwise terminated.  See Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 518-519 (2d Cir. 2001).  This argument is without merit.  In New York, the continuous representation doctrine applies only to "continuous representation . . . in connection with the particular transaction which is the subject of the action," and "not merely during the continuation of a general professional relationship."  Zaref v. Berk & Michaels, P.C., 192 A.D.2d 346, 347-348, 595 N.Y.S.2d 772, 774 (1st Dep't 1993).  Thus, representation "is not 'continuous' if the services rendered are discrete and complete."  Frank Mgmt., Inc. v. Weber, 549 N.Y.S.2d 317, 321 (N.Y. Sup. Ct., N.Y. County 1989).  Here, the Trustee's services with respect to Appellants' requested claims were "discrete and complete" when these causes of action expired.  Thus, the Trustee's continuing representation of

13

the estate on other matters did not toll the limitations period.

In addition, the continuous representation doctrine does not apply when the "trust, confidence and reliance and the disparity in professional knowledge ordinarily present" in a fiduciary relationship ceases to exist. <u>Frank Mgmt., Inc.</u>, 549 N.Y.S.2d at 321. In this case, the requisite "trust, confidence and reliance" between Appellants and Trustee had long since dissipated, if it ever existed in the first place.

Finally, it is unclear, at best, if New York law would <u>ever</u> apply the continuous relationship doctrine to the kind of court-imposed, non-consensual relationship that Appellants and the Trustee shared. The continuing representation doctrine derives from medical and legal malpractice cases. <u>See</u> <u>Glamm v. Allen</u>, 57 N.Y.2d 87, 93 (N.Y. 1982). It emerged out of a recognition that a client cannot be "expected to jeopardize his pending case or his relationship" with the fiduciary to pursue an adversarial claim. <u>Id.</u> at 94. Here, Appellants never enjoyed a client/advocate relationship with the Trustee, in the way they would with a doctor or attorney. Instead, the Trustee was appointed to administer the estate impartially. And the continuous representation doctrine generally does not cover these kinds of impartial, arms-length fiduciary relationships. For instance, it does not cover relationships with escrow agents. <u>See</u> <u>Lazzaro v. Kelly</u>, 57 N.Y.2d

14

630, 632, 439 N.E.2d 868, 868 (N.Y. 1982). After all, in such relationships, a party does not "jeopardize" anything by bringing timely claims against the impartial fiduciary.

In short, the Court finds that Appellants' claims against the Trustee have long been time-barred. The continuous relationship doctrine cannot save these claims. And, accordingly, the Bankruptcy Court properly denied Appellants' motion to reopen the bankruptcy case to enable Appellants to bring them.

C. <u>Claims Against The Bond</u>

11 U.S.C. § 322(d) provides for a two year statute of limitations for causes of action brought against a bankruptcy trustee's bond, commencing upon the date the trustee is discharged. But a party cannot bring claims against the trustee's bond if those claims would be time-barred against the trustee. <u>See</u> <u>In re Tri-State Hoists</u>, 80-BK-02909S, 1991 Bankr. LEXIS 2224, *17 (E.D. Pa. Bankr. Sep. 26, 1991); <u>see also</u> <u>In re Louis Rosenberg Auto Parts, Inc.</u>, 209 B.R. 668, 673 (W.D. Pa. Bankr. 1997). Here, as discussed above, Appellants' claims against the Trustee have long been time-barred. Consequently, the Bankruptcy Court properly precluded Appellants from bringing claims against the bond.

CONCLUSION

For the reasons set forth above, the Bankruptcy Court's order denying the Smiths' motion to reopen is AFFIRMED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March  24 , 2010
         Central Islip, New York